**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles CRAWFORD,
Defendant-Appellant.**

No. 81–2109.

United States Court of Appeals,
Tenth Circuit.

May 2, 1983.

Rehearing Denied June 2, 1983.

Charles H. Torres, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on brief), for plaintiff-appellee.

Kenneth S. Canfield, Denver, Colo. (Harold A. Haddon, Denver, Colo., with him on brief) of Haddon, Morgan & Foreman, Denver, Colo., for defendant-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Charles Crawford (Crawford) appeals his jury conviction of two counts of wire fraud in violation of 18 U.S.C.A. § 1343 and one count of inducing a person to travel in interstate commerce in furtherance of a scheme to defraud in violation of 18 U.S.C.A. § 2314. Crawford's co-defendant Dell Burke (Burke) was also convicted of two counts of wire fraud. However, her motion for a new trial was granted by the district court on its finding that failure to sever the co-defendants for trial had been prejudicial to Burke.

During 1980 Crawford operated a financial consulting firm in Las Vegas, Nevada, specializing in loan brokerage work. In July 1980, three Colorado businessmen, each of whom was seeking funding for a business loan, flew to Las Vegas and met with Crawford. As a result of this meeting, Crawford was paid a total of $45,700 in advance fees predicated upon his assurances that the respective loans would be quickly funded and that the advance fees would be refunded in the event that funding did not

materialize. Crawford failed to obtain the requested loans. Furthermore, he failed to return the advance fees. Subsequently Crawford was indicted on the charges giving rise to the convictions herein.

During the course of the trial, the Government detailed the $45,700 payment to Crawford, his repeated assurances that the loans would be funded, his failure to fund the loans, and his failure to return the advance fees paid to him. The Government also presented the testimony of three other individuals who had solicited Crawford's assistance in funding business loans. All three testified that they had paid Crawford an advance fee in reliance upon his assurances of quick funding and a return of the advance fee in the event that funding did not materialize. All three testified that Crawford did not fund their loans and did not return their advance fees.

Crawford's defense was based on his testimony and that of several witnesses. Crawford's witnesses delineated his successful loan brokerage activities. Crawford testified that he did not intend to defraud the three Colorado businessmen, and that he had been unable to refund the advance fees because of an embezzlement in his office and difficulty in collecting monies owed to him by others. Crawford did admit to spending a portion of the $45,700 on personal business projects.

On appeal Crawford contends: (1) improper actions by the prosecuting attorney and trial judge deprived him of his right to a fair trial; (2) the court erred in admitting evidence of his alleged similar wrongdoings; and (3) the court erred by denying his pre-trial motion for a severance.

I.

a.

Crawford contends the prosecuting attorney threatened the defense witnesses with criminal prosecution if they testified, thereby interfering with his ability to present a defense.

This contention is based upon the Assistant United States Attorney's notifying the district court and defense counsel, outside the presence of the jury, that several of Crawford's witnesses were under investigation in other jurisdictions. After the Government had rested, but before Crawford presented his case, the Assistant United States Attorney advised the district court:

With regard to the witnesses that are going to be called by Mr. Moyer, the names of some of the people he has given me may be people that might be looked at in other states, I think it's encumbent [sic] if Mr. Moyer won't do this, the Court might possibly advise them, if they at least have checked with an attorney before they get up on the stand and give testimony under oath, that may possibly be used against them later. I don't know what other U.S. Attorneys are going to do on these other cases. I want to advise the Court that there are names mentioned to us that may or may not come up in other cases.

[R., Vol. V at p. 526].

Subsequently, the following colloquy transpired between the district court and defense counsel:

THE COURT: Very well. Mr. Moyer, I take it that you have so advised and warned all the witnesses you intend to call?

MR. MOYER: I have, Your Honor. And I would state for the record that all of my witnesses have the same feeling, they believe this is a blatant attempt at harassment and intimidation, and they have asked me to ask that this Court cite the U.S. Prosecutor's office for misconduct and take such action as is appropriate.

\* \* \* \* \* \*

THE COURT: The motion is denied.

MR. MOYER: That's fine. Am I precluded from questioning of those witnesses if they have knowledge of such a request by the United States government?

THE COURT: It's my understanding you told them about it, isn't that right?

MR. MOYER: I did, Your Honor, but I certainly believe it affects the possible credibility of their case, of their testimony, and I think they are entitled to tell that to the jury. I would like a ruling from the Court as to whether or not I am precluded so I do not commit error.

\* \* \* \* \* \*

THE COURT: Well, your record is made, Mr. Moyer, and your motion, if it is a motion, is denied. I want the record to reflect clearly that it's my impression that, very clear impression, that the Assistant United States Attorney is simply doing his duty as he sees it. . . .

[R., Vol. VI at pp. 549–552]. All the defense witnesses testified extensively relative to their associations with Crawford. At no time during direct or cross-examination did any of the defense witnesses assert their Fifth Amendment privilege against self incrimination.

The right of a defendant to establish a defense by presenting his own witnesses is a fundamental element of due process. *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Simmons,* 670 F.2d 365 (D.C.Cir.1982). Substantial governmental interference with a defense witness's decision to testify violates a defendant's due process rights. *United States v. Goodwin,* 625 F.2d 693 (5th Cir. 1980); *United States v. Henricksen,* 564 F.2d 197 (5th Cir.1977). However, neither the prosecution nor the defense may call a witness knowing that the witness will assert his Fifth Amendment privilege against self incrimination. *United States v. Martin,* 526 F.2d 485 (10th Cir.1975); *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Furthermore, an attorney, as an officer of the court, must disclose that which he is required by law to reveal.

*United States v. Perez-Gomez,* 638 F.2d 215 (10th Cir.1981).

■ We hold that the actions of the Assistant United States Attorney in informing the court and defense counsel that several of Crawford's witnesses were targets of other investigations did not deprive Crawford of a fair trial. We believe the district court properly assessed the disclosure when the court stated it was of the "very clear impression that the Assistant United States Attorney is simply doing his duty as he sees it." The Assistant United States Attorney was the only party to the proceedings aware of the fact that several of the defense witnesses were targets of other investigations. As such, he was obligated to disclose this fact to the court and defense counsel in order to avoid a potential mistrial. Nothing in the record before us indicates that this disclosure was handled in any way but a proper and professional manner.

The case against Crawford was very strong. In *United States v. Blitstein,* 626 F.2d 774 (10th Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), we stated:

The totality of the Government's evidence was strong. Where the evidence against the accused is strong, the appellant must show that the prejudice he claims constitutes plain error. *Hall v. United States,* 404 F.2d 1367 (10th Cir. 1969). A conviction will not be disturbed on appeal where it is clear, after a careful review of the whole record, that the alleged errors did not deprive the appellant of his substantial rights.

626 F.2d at p. 784. We have conducted a careful review of the record and hold that the actions of the Assistant United States Attorney did not deprive Crawford of a fair trial.

b.

Crawford contends that the prosecuting attorney repeatedly asked him improper questions during cross-examination and thereby deprived him of a fair trial.

Two witnesses for the Government testified that Crawford represented to them that he had a substantial financial background and a Ph.D. degree. Crawford did not testify on direct examination relative to his educational background but he did state that he intended to pay back the advance fees collected herein through the assignment of an interest in some of his real estate holdings.

Thereafter, while he was being cross-examined, Crawford responded to questions by the prosecutor that he had received a Ph.D. from Florida Research Institute and that during July 1980 he had a net worth of $700,000 to $800,000 "based upon real estate value, based upon stock that we owned." [R., Vol. VI at p. 682]. Crawford denied that he had bought the Ph.D. degree for $15.00 and that his properties in July and August of 1980 were limited to an interest in some half-built show homes.

■ Crawford did not object to the questions relative to his education, nor did he move that the testimony be stricken or that he be granted a mistrial. We cannot and do not condone the Government's action in pursuing this line of cross-examination. Even so, Crawford did not move for a mistrial. Under these circumstances, we must hold that Crawford cannot now prevail on his claim that the Government's cross-examination deprived him of a fair trial. In assessing the significance of the error, in the absence of a motion for mistrial, we must weigh the prejudicial effect of the cross-examination with the weight of the evidence pointing to Crawford's guilt. The scales weigh heavily against Crawford. The improper questions did not result in demonstrated prejudice to Crawford. On appeal, error is not to be presumed and the burden of demonstrating prejudicial error is on the appellant. *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); Fed.R.Cr.P. 52(a). Crawford's alle-

gations that the Government's cross-examination relative to his real estate holdings was prejudicial is also without merit, when, as here, Crawford raised this matter on direct examination.

### c.

■ Crawford contends that the trial judge made several improper remarks which deprived him of a fair trial. We have read the entire trial transcript and conclude that this argument is specious. Nothing in the record supports Crawford's allegations that the district court acted improperly. This is not a case in which a conviction must be reversed because the judge's conduct or appearance at the trial did not comport with the appearance of justice. *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *United States v. Gigax,* 605 F.2d 507 (10th Cir. 1979).

### II.

We have considered Crawford's remaining allegations of error and find them to be without merit. We observe merely that under rules 404(b) and 403 of the Federal Rules of Evidence, the district court properly admitted evidence of Crawford's prior similar conduct. We further observe that the district court properly denied Crawford's motion for a severance, and after the trial corrected the prejudice to Burke by granting her motion for a new trial.

AFFIRMED.