**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY SERRANO,

    Defendant-Appellant.

No. 04-2090

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 03-CR-1735-MCA)**

---

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Charles S. Aspinwall, Charles S. Aspinwall Ltd., Co., Los Lunas, New Mexico, for Defendant-Appellant.

---

Before **EBEL**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**BALDOCK**, Circuit Judge.

---

    A grand jury indicted Defendant Anthony Serrano, a felon, on various firearms charges after law enforcement seized a 30.06 rifle from his home and a sawed-off shotgun from his vehicle. At trial, Defendant claimed he did not knowingly possess either the rifle or shotgun. An unpersuaded jury convicted Defendant of: (1) being a felon in

possession of a sawed-off shotgun in violation of 18 U.S.C. § 922(g)(1) ("count I");

(2) knowingly possessing a sawed-off shotgun not registered in the National Firearms

Registration and Transfer Record in violation of 26 U.S.C. § 5861(d) ("count II"); and

(3) being a felon in possession of a 30.06 rifle in violation of 18 U.S.C. § 922(g)(1)

("count III"). The district court sentenced Defendant to 262 months imprisonment.

Defendant appeals, arguing (1) the coercive and intimidating conduct of the district judge

and prosecutor dissuaded two of his witnesses from testifying in violation of his

constitutional right to present a defense, (2) the district court erred in refusing to grant his

two witnesses immunity after they invoked the privilege against self incrimination, and

(3) the district court unconstitutionally increased his sentence under the United States

Sentencing Guidelines' ("Guidelines") obstruction of justice provision, see U.S.S.G.

§ 3C1.1, and the Armed Career Criminal Act ("ACCA"), see 18 U.S.C. § 924(e). We

have jurisdiction, 28 U.S.C. § 1291, and affirm.

I.

With respect to the felon-in-possession charges, the government had the burden of

proving: (1) Defendant knowingly possessed the sawed-off shotgun (count I) and 30.06

rifle (count III); (2) Defendant had been convicted of a felony offense before he

possessed the shotgun and rifle; and (3) Defendant's possession of the shotgun and rifle

was in or affecting interstate commerce. See 18 U.S.C. § 922(g)(1); United States v.

Griffin, 389 F.3d 1100, 1104 (10th Cir. 2004). With respect to the possession of an

2

unregistered firearm charge (count II), the government had the burden proving: (1) Defendant knowingly possessed the sawed-off shotgun, see Staples v. United States, 511 U.S. 600, 602 (1994); (2) the sawed-off shotgun had a barrel less than 18 inches in length or an overall length of less than 26 inches, see 26 U.S.C. § 5845(a)(2); (3) Defendant knew the characteristics or features of the sawed-off shotgun, see Staples, 511 U.S. at 602, 619; (4) the sawed-off shotgun was in operating condition, see 26 U.S.C. § 5845(d); and (5) the sawed-off shotgun was not registered to Defendant in the National Firearms Registration and Transfer Record, see id. § 5861(d).

At trial, Defendant admitted he was a convicted felon, see Old Chief v. United States, 519 U.S. 172, 191-92 (1997), and that the 30.06 rifle and sawed-off shotgun affected interstate commerce. The government also presented uncontroverted evidence that (1) the shotgun had a 13-inch barrel and an overall length of 23 inches, (2) the shotgun operated as designed, and (3) Defendant did not register the shotgun in the National Firearms Registration and Transfer Record. The sole disputed issue at trial was whether Defendant knowingly possessed the shotgun and rifle.

The government presented the testimony of several witnesses in its case-in-chief to prove Defendant knowingly possessed the sawed-off shotgun and 30.06 rifle. With respect to the sawed-off shotgun, two sheriff's deputies testified they discovered the shotgun in Defendant's vehicle after a traffic stop. The deputies found the shotgun within Defendant's reach underneath the vehicle's front seat. The passenger in the vehicle at the

time of the stop, Carlos Najar, testified the shotgun did not belong to him. With respect to the 30.06 rifle, Defendant's former neighbor, adopted daughter, now ex-wife (Mary Serrano), and two former brothers-in-law all testified Defendant possessed the rifle.

After the government rested, Defendant offered the jury an alternative theory. Defendant, in his opening statement, informed the jury that Michael Serrano (Defendant's son) and Manuel Franco (Najar's roommate) would testify the sawed-off shotgun belonged to Najar. The evidence would also show, according to Defendant, Mrs. Serrano placed *her* 30.06 rifle in their house and then called the authorities to report Defendant's illegal possession of the rifle. Defendant, consistent with his theory of the case, called Michael Serrano as his second witness. Shortly after Michael Serrano took the stand, however, the government requested a bench conference. The government's attorney told the district judge that he thought Michael Serrano "should be advised of his constitutional rights . . . and the reason for that is because [the government] has interviewed him. He has admitted that he was in the possession together with Carlos Najar of a sawed-off shotgun, and if he's going to testify under oath, he's going to admit to it."[1]

---

[1] Defendant asserts on appeal that "[t]he prosecutor was disingenuous in raising the self-incrimination issue" and only raised the issue "to gain a tactical advantage at trial[.]" To the extent Defendant is arguing the government engaged in bad faith, we reject his argument because it is not supported by the record. See United States v. Crawford, 707 F.2d 447, 450 (10th Cir. 1983) (explaining an assistant United States attorney had an obligation to disclose the fact that several of the defense witnesses were targets of other investigations); United States v. Williams, 205 F.3d 23, 32 (2d Cir. 2000) (explaining that failing to advise a witness of the possible need for counsel and of his

(continued...)

4

The court, outside the presence of the jury, questioned Michael Serrano and learned he had not discussed his constitutional rights, especially his right against self incrimination, with a lawyer. The colloquy between the district court and Michael Serrano proceeded as follows:

> THE COURT: . . . Mr. Serrano, how old are you?
> THE WITNESS: I'm 23.
> THE COURT: All right. You may be asked a number of questions here by one of the attorneys that may require you to give testimony about things that you know concerning the shotgun. The government has indicated to me that you have given a statement concerning the sawed-off shotgun. You may be asked questions about matters concerning yourself and that shotgun. And before I permit any questioning about the shotgun and any involvement you may have had with that weapon, if any – I don't know, I don't know what the statements are at this point because the questions have not yet been asked – I need to ask you if you have talked to a lawyer about any of your constitutional rights, specifically the right against self-incrimination?
> THE WITNESS: No, ma'am.
> THE COURT: All right. I must advise you that a person such as yourself who is now a witness having been sworn to give testimony in this case, you as a witness ha[ve] the privilege under the 5th Amendment to the United States Constitution to decline to respond to a question if that answer would tend to incriminate you. That is, if that answer would tend to indicate that you were guilty of a crime or would furnish a link in the chain of evidence that would be needed to prosecute you for a crime.
> I don't know specifically what information you have and what answers you would give or statements that you would make in response to questions that may be asked of you during the course of your testimony here. However, based upon the representations made by the lawyer for the

---

[1](...continued)
right against self incrimination before proceeding with an interview is inconsistent with established standards of prosecutorial conduct); United States v. Jackson, 935 F.2d 832, 847 (7th Cir. 1991) (noting "ethical duties require prosecutors to warn unrepresented witnesses of the risk that the testimony they are about to give may be used against them.").

government here, there may be matters that you would be questioned about that would invoke consideration of the 5th Amendment right. And so when I say that, I ask again whether you have talked to a lawyer about any of these matters?

THE WITNESS: No, ma'am.

THE COURT: Okay. Do you wish to confer with a lawyer about this before you give any further testimony?

THE WITNESS: No, ma'am.

THE COURT: Can you explain to me why? Without going into details about the statement or anything about the gun, just tell me why you feel it is not necessary to talk to a lawyer.

THE WITNESS: Because I'm just telling the truth about everything.

THE COURT: I understand that. Has anyone advised you or talked to you about the consequences, the legal consequences that could occur if you give or make certain statements about the gun, the shotgun, and about your involvement with the shotgun?

THE WITNESS: No, ma'am.

THE COURT: All right. I'm going to – I'm not in a position to determine at this moment that this witness understands the nature of the 5th Amendment privilege. I think he needs counsel, and I'm not going to permit any further questioning until he has had an opportunity to confer with counsel. . . .

The court then appointed an attorney to confer with the witness and recessed. Michael Serrano exercised his Fifth Amendment privilege against self incrimination after he conferred with his attorney.

Next, Defendant's attorney informed the district court he anticipated calling Najar's roommate, Manuel Franco, to testify. Franco, according to Defendant's proffer, would testify Najar owned the sawed-off shotgun and, on the night in question, armed himself with the shotgun before he got into Defendant's vehicle. Franco's testimony, however, raised the same Fifth Amendment concerns as Michael Serrano's proffered testimony (i.e., he ran the risk of being charged with misprision of felony or possession of

6

an unregistered illegal firearm if he testified).  The district judge similarly appointed counsel to advise Franco of his constitutional rights.  Franco exercised his Fifth Amendment privilege after he conferred with his attorney.

The district court found Michael Serrano and Manuel Franco properly invoked their Fifth Amendment privilege because the testimony of both witnesses could furnish a link in the chain of evidence needed to prosecute them or subject them to the possibility of prosecution.  See Hoffman v. United States, 341 U.S. 479, 486 (1951) (explaining the "privilege afforded [by the Fifth Amendment] not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.").  The district court further found that if the witnesses took the stand any testimony they provided would be incriminatory.  The court therefore precluded Defendant from calling either witness.  See United States v. Castorena-Jaime, 285 F.3d 916, 931 (10th Cir. 2002) (explaining a defendant does not have the right to force a witness to invoke his Fifth Amendment privilege before the jury).  Defendant objected, arguing the court's ruling effectively deprived him of critical exculpatory evidence.  Defendant also made a motion for the district court to grant Michael Serrano and Manuel Franco use immunity under 18 U.S.C. § 6003.  The district court denied the motion.

Defendant subsequently testified in his own defense. He testified on direct examination that he had not owned or possessed any firearms, but admitted on cross examination that he had a felon in possession of a firearm conviction. Defendant opined that Najar put the shotgun in his vehicle. Defendant also testified the deputies did not discover the sawed-off shotgun underneath his vehicle's seat. With respect to the 30.06 rifle, Defendant claimed Mrs. Serrano purchased the rifle and, unbeknownst to him, placed it in their house. The jury convicted Defendant on all counts.

## II.

On appeal, Defendant first argues the coercive and intimidating conduct of the district judge and prosecutor caused Michael Serrano and Manuel Franco to invoke the privilege against self incrimination in violation of his constitutional right to present a defense. We review Defendant's claim that the government violated his constitutional right to present a defense de novo. United States v. Solomon, 399 F.3d 1231, 1239 (10th Cir. 2005).

## A.

A criminal defendant's right to present a defense is essential to a fair trial. United States v. Valenzuela-Bernal, 458 U.S. 858, 875 (1982) (O'Connor, J., concurring). The Fifth (or Fourteenth if a state is involved) and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. Washington v. Texas, 388 U.S. 14, 18-19

(1967). The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause, see Taylor v. Illinois, 484 U.S. 400, 407-408 (1988), "establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987). Likewise, "[t]he necessary ingredients of the [Fifth and] Fourteenth Amendement[s'] guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony[.]" Rock v. Arkansas, 483 U.S. 44, 51 (1987).

A defendant's right to present a defense, however, is not absolute. Valenzuela-Bernal, 458 U.S. at 867. "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Rock, 483 U.S. at 55 (internal quotations omitted). For example, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, *privileged*, or otherwise inadmissible under standard rules of evidence." Taylor, 484 U.S. at 410 (emphasis added). The right to present a defense, as a result, does not displace traditional testimonial privileges. See, e.g., Valdez v. Winans, 738 F.2d 1087, 1089-90 (10th Cir. 1984) (holding the Compulsory Process Clause did not override the attorney-client privilege); United States v. Lea, 249 F.3d 632, 642-43 (7th Cir. 2001) (holding the Compulsory Process Clause did not override the marital-communications privilege). The Fifth Amendment privilege, no less, "reflects a

9

complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." Kastigar v. United States, 406 U.S. 441, 444 (1972) (footnotes omitted). Several courts of appeal, therefore, have held a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination. See United States v. Moussaoui, 382 F.3d 453, 466-67 (4th Cir. 2004); United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001); United States v. Gaitan-Acevedo, 148 F.3d 577, 588 (6th Cir. 1998); United States v. Vavages, 151 F.3d 1185, 1191-92 (9th Cir. 1998); United States v. Edmond, 52 F.3d 1080, 1109 (D.C. Cir. 1995); United States v. De La Cruz, 996 F.2d 1307, 1312 (1st Cir. 1993); United States v. Hernandez, 962 F.2d 1152, 1161 (5th Cir. 1992); United States v. Turkish, 623 F.2d 769, 774 (2d Cir. 1980).

That said, the government cannot substantially interfere with a defense witness's decision to testify. In Webb v. Texas, 409 U.S. 95, 97-98 (1972) (per curiam), the Supreme Court held a trial judge's "lengthy and intimidating warning" and "threatening remarks" effectively caused the defendant's only witness not to testify in violation of the Due Process Clause. Therefore, a judge's admonition to a witness can violate Webb if it is threatening and employs coercive language. United States v. Smith, 997 F.2d 674, 680 (10th Cir. 1993). Courts have applied Webb to prosecutors, United States v. Crawford, 707 F.2d 447, 449 (10th Cir. 1983), and to the joint conduct of the district judge and prosecutor. United States v. Blackwell, 694 F.2d 1325, 1333-35 (D.C. Cir. 1982).

10

The due process analysis Webb dictates must be conducted on a case-by-case basis. Smith, 997 F.2d at 680. The dispositive question in each case is whether the government actor's interference with a witness's decision to testify was "substantial." Crawford, 707 F.2d at 449. Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering. Smith, 997 F.2d at 680; see also United States v. Davis, 974 F.2d 182, 187 (D.C. Cir. 1992). The potential for unconstitutional coercion by a *government actor* significantly diminishes, however, if a defendant's witness elects not to testify after consulting an independent attorney. See Smith, 997 F.2d at 683 (Belot, J., concurring).

B.

In this case, the government's actions did not substantially interfere with Defendant's right to present a defense under the Fifth and Sixth Amendments. The district court found Michael Serrano and Manuel Franco properly invoked their Fifth Amendment privilege. The record supports the court's finding and Defendant does not challenge it on appeal. Thus, Defendant did not have the constitutional right to compel Michael Serrano or Manuel Franco to waive their Fifth Amendment privileges. Defendant's right to compel and offer testimony had to bow to accommodate other legitimate interests in the criminal trial process.

Likewise, the joint action of the district judge and prosecutor did not substantially interfere with Defendant's right to present a defense in violation of the Due Process Clause. The prosecutor did not act in bad faith when he notified the court that the witnesses' testimony could subject them to prosecution for misprision of felony or possession of an unregistered illegal firearm. See supra n.1. Moreover, the district court's colloquy with Michael Serrano was different in degree *and* kind from the unconstitutional admonitions in Webb and its progeny. The district judge did not threaten the witnesses nor did she employ coercive language. To the contrary, the district judge properly expressed a legitimate concern that the witnesses' truthful testimony could subject them to prosecution. See Smith, 997 F.2d at 680 (explaining that, as a general rule, a court has the discretion to warn a witness about the possibility of incriminating himself).

Thus, neither the prosecutor nor the district judge discouraged the witnesses from testifying through threats of prosecution, intimidation, or coercive badgering. Indeed, nothing in the record indicates the prosecutor ever spoke a word to Michael Serrano or Manuel Franco about the witnesses' testimony at trial. The district court engaged in a brief colloquy with Serrano and Franco to determine if the witnesses understood their constitutional rights. The court thereafter appointed counsel to inform the witnesses of their constitutional rights. The witnesses invoked their Fifth Amendment privilege only after conferring with their independent attorneys. The witnesses' decision not to testify

12

was not the product of improper *governmental* coercion of the kind the Court condemned in Webb, but instead was a decision insulated from such governmental pressures by the independent and neutral advice of counsel. The governmental action in this case, therefore, did not run afoul of the Due Process Clause.

## III.

Second, Defendant argues the district court erred when it denied his motion under 18 U.S.C. § 6003 to grant use immunity to Michael Serrano and Manuel Franco in the "interests of justice." We review Defendant's claim that § 6003 permits a district court to grant immunity – an issue of statutory construction – de novo. United States v. LaHue, 170 F.3d 1026, 1028 (10th Cir. 1999).

## A.

The Constitution charges the Executive Branch with faithfully executing the laws. U.S. Const. art. II, § 3. To that end, the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (internal quotations omitted). Congress has routinely enacted immunity statutes over the years to facilitate the Executive's enforcement of the criminal laws, recognizing "the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." Kastigar, 406 U.S. at 446. In this line, the Immunity of Witnesses Act, 18 U.S.C. §§ 6001-6005, permits a United States attorney,

with the approval of the Attorney General, to grant witnesses use immunity in order to compel their testimony in court or grand jury proceedings. Id. §§ 6002, 6003.

The Immunity Act provides the district court with authority to issue "an order requiring [an individual who has been or may be called to testify] to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination[.]" Id. § 6003(a). The district court can *only* enter an order under the Immunity Act when a United States attorney, with proper approval of the Attorney General, requests such an order. Id. § 6003(a)-(b). Thus, "'Congress gave certain officials in the Department of Justice *exclusive authority* to grant immunities.'" United States v. Doe, 465 U.S. 605, 616 (1984) (quoting Pillsbury Co. v. Conboy, 459 U.S. 248, 253-54 (1983) (emphasis added)).

Because Congress expressly left the decision to seek immunity "exclusively to the Justice Department[,]" Doe, 465 U.S. at 616-17, courts of appeal have consistently held grants of immunity are within the prosecutor's discretion. McGee v. Crist, 739 F.2d 505, 509 (10th Cir. 1984) (collecting cases). We have also held "courts have no inherent authority to grant a witness use immunity." United States v. LaHue, 261 F.3d 993, 1014 (10th Cir. 2001). Every other Circuit, save the Third, has likewise held a district court does not have the inherent authority to grant a defense witness use immunity. See Moussaoui, 382 F.3d at 466 (4th Cir.); United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001); United States v. Perkins, 138 F.3d 421, 424 (D.C. Cir. 1998); United States v.

14

Mackey, 117 F.3d 24, 27 (1st Cir. 1997); United States v. Follin, 979 F.2d 369, 374 (5th Cir. 1992); United States v. Cuthel, 903 F.2d 1381, 1384 (11th Cir. 1990); United States v. Wilson, 715 F.2d 1164, 1173 (7th Cir. 1983); United States v. Lenz, 616 F.2d 960, 962 (6th Cir. 1980); Turkish, 623 F.2d at 772-73 (2d Cir.); United States v. Alessio, 528 F.2d 1079, 1081 (9th Cir. 1976); but see Government of Virgin Islands v. Smith, 615 F.2d 964, 968-69 (3d Cir. 1980). In short, the United States attorney and his superiors have the sole power to apply for immunity, LaHue, 261 F.3d at 1014, because Congress explicitly left federal courts out of the business of weighing the comparative worth of granting use immunity to a defense witness. See Doe, 465 U.S. at 616 (explaining the decision to seek use immunity involves a balancing of governmental interests left exclusively to the Executive Branch); Ullmann v. United States, 350 U.S. 422, 431-33 (1956) (holding a district court has no discretion to determine whether the exchange of immunity from prosecution for testimony would best serve the public interest).

B.

In this case, the district court correctly denied Defendant's motion to grant Michael Serrano and Manuel Franco immunity. Section 6003 only permits a district court to enter an immunity order upon the request of a United States attorney and the United States attorney made no such request here. The district court did not have the inherent authority to grant Serrano and Franco immunity in the "interests of justice." Defendant's reliance upon the Third Circuit's case in Smith, 615 F.2d at 968-69, to argue the contrary is

misplaced.  We explicitly rejected the reasoning in <u>Smith</u> over twenty years ago.  <u>See</u>

<u>United States v. Hunter</u>, 672 F.2d 815, 818 (10th Cir. 1982) (concluding "courts have no

power to independently fashion witness use immunity under the guise of due process"),

*overruled on other grounds by* <u>United States v. Call</u>, 129 F.3d 1402, 1404 & n.2 (10th

Cir. 1997).[2]

Defendant also argues, relying on the United States Attorney's Manual, that the

prosecutor in this case should have granted Serrano and Franco immunity.  Defendant's

argument fails because the manual does not create any substantive rights and, in any

event, the decision to grant immunity lies in the *exclusive* discretion of the prosecutor.

Moreover, we presume the United States attorney's office has properly discharged its

official duties absent clear evidence to the contrary.  <u>Armstrong</u>, 517 U.S. at 464.  The

prosecutor's discretion is, of course, subject to constitutional constraints.  <u>Id.</u>  No

evidence in the record shows the prosecutor engaged in misconduct, <u>see</u> <u>supra</u> n.1., and

no constitutional violation occurred here.

---

[2] In <u>Hunter</u>, 672 F.2d at 818, we left open the question whether a district court could compel a United States attorney, on pain of dismissal, to grant immunity when the prosecutor deliberately denies immunity in an attempt to distort the fact finding process. <u>See also</u> <u>LaHue</u>, 261 F.3d at 1014 (same).  Similarly, we have no reason to reach that question today because Defendant has not argued the district court should have entered an order requiring the United States attorney to grant immunity as a sanction for prosecutorial misconduct.  <u>See</u> <u>Doe</u>, 465 U.S. at 616 n.16.

IV.

Third, Defendant argues the district court violated his right to a jury trial under the Sixth Amendment when it adjusted his base offense level upward two levels for obstruction of justice.  See U.S.S.G. § 3C1.1; Blakely v. Washington, 124 S. Ct. 2531 (2004); United States v. Booker, 125 S. Ct. 738 (2005).  Defendant did not raise his Booker argument in the district court.  We thus review Defendant's forfeited Booker error for plain error.  United States v. Gonzalez-Huerta, 403 F.3d 727, 2005 WL 807008, *3 (10th Cir. 2005) (en banc).[3]

A.

In Booker, 125 S. Ct. at 756, the Supreme Court held that, under the Guidelines, the Sixth Amendment requires:  "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  To remedy the constitutional infirmity inherent in the Guidelines, the Court rendered the Guidelines advisory.  Id. at 757.  A pre-Booker sentencing court could, therefore, commit "non-constitutional Booker error" or "constitutional Booker error."  Gonzalez-Huerta, 2005 WL 807008, at *2.  Non-

_____

[3] The district court sentenced Defendant pre-Blakely and Booker.  Defendant argues we should review his claims of Sixth Amendment error de novo because of the intervening change in the law.  In Gonzalez-Huerta, 2005 WL 807008, at *5, 7, the en banc Court rejected this line of reasoning, so we must do the same.

17

constitutional <u>Booker</u> error exists if the sentencing court mandatorily applied the

Guidelines.  <u>Id.</u>  Constitutional <u>Booker</u> error exists if the sentencing court relied upon

judge-found facts, other than those of a prior conviction, to enhance a defendant's

sentence mandatorily.  <u>Id.</u>

If forfeited, both types of <u>Booker</u> error are reviewed under the plain-error test.

<u>Gonzalez-Huerta</u>, 2005 WL 807008, at *3; <u>United States v. Dazey</u>, Nos. 03-6187, 03-

6205, 03-6208, 03-6228, 2005 WL 846227, *19 (10th Cir. April 13, 2005).  As a result,

we can only correct an alleged <u>Booker</u> error not raised in the district court if (1) the

sentencing court committed an actual error, (2) the error is plain or obvious, (3) the plain

error affects substantial rights, and (4) the plain error seriously affects the fairness,

integrity, or public reputation of judicial proceedings.  <u>Gonzalez-Huerta</u>, 2005 WL

807008, at *3.  Non-constitutional and constitutional <u>Booker</u> errors satisfy the first two

prongs of the plain-error test.  <u>United States v. Clifton</u>, No. 04-2046, 2005 WL 941581,

*5 (10th Cir. April 25, 2005).  Under the third prong of the plain-error test, the defendant

bears the burden of demonstrating a reasonable probability that, but for the <u>Booker</u> error,

the result of the sentencing proceeding would have been different.  <u>Id.</u> at *6.  Under the

fourth prong of the plain-error test, we will notice a non-constitutional <u>Booker</u> error only

if the error is particularly egregious and failure to notice the error would result in a

miscarriage of justice.  <u>Gonzalez-Huerta</u>, 2005 WL 807008, at *7.  In the case of

18

constitutional <u>Booker</u> error, we apply this demanding standard less rigidly. <u>Dazey</u>, 2005 WL 846227, at \*19.

B.

In this case, we review Defendant's forfeited <u>Booker</u> error for plain error. The <u>Booker</u> error is clear or obvious error under current law. Defendant, however, has failed to carry his burden of demonstrating a reasonable probability exists that, but for the <u>Booker</u> error, the result of his sentencing proceeding would have been different. To start, Defendant's base offense level was twenty. <u>See</u> U.S.S.G. § 2K2.1(a)(4)(B). The district court then adjusted Defendant's offense level upward two levels to twenty-two based upon his obstruction of justice. <u>Id.</u> § 3C1.1.

In addition to that calculation, however, the district court also determined that Defendant was an armed career criminal under 18 U.S.C. § 924(e)(1). Based upon Defendant's armed career criminal status, the district court determined Defendant's base offense level was thirty-four. <u>See</u> U.S.S.G. § 4B1.4. Section 4B1.4(b) further required the district court to calculate Defendant's sentencing range using the greater of the two offense levels – thirty-four for being an armed career criminal or twenty-two for unlawfully possessing a firearm and obstructing justice. The district court, therefore, used the offense level dictated by Defendant's armed career criminal status (thirty-four) to calculate the applicable Guidelines range. Consequently, the obstruction-of-justice enhancement that Defendant now challenges actually fell out of the offense level

19

calculation. For these reasons, Defendant has failed to show a reasonable probability that the district court's two level enhancement of his offense level for obstruction of justice affected the length of his sentence. As a result, Defendant has failed to carry his burden under the third prong of the plain-error test and we need not reach the fourth prong.

V.

Finally, Defendant argues the district court violated his Sixth Amendment right to a jury trial under the Sixth Amendment, as construed in Blakely and Booker, when it enhanced his sentence under the ACCA. Because Defendant did not raise this Booker argument in the district court, we review for plain error. Gonzalez-Huerta, 2005 WL 807008, at *3.

A.

The ACCA requires a mandatory minimum sentence of fifteen years for a defendant who is (1) convicted of being a felon in possession of a firearm, and (2) has "three previous convictions by any court . . . for a violent felony . . . committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1); Shepard v. United States, 125 S. Ct. 1254, 1257 (2005). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, *arson*, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). We recently explained that "[b]ecause determining whether a given

20

felony constitutes a 'violent felony' is a question of law and not fact, the Sixth Amendment does not require that determination to be made by a jury." United States v. Moore, 401 F.3d 1220, 1225 (10th Cir. 2005). "Booker's exception for prior convictions subsumes inquiries into whether a given conviction constitutes a 'violent felony.'" Id. Therefore, "[n]either the existence of prior convictions, nor their classification as 'violent felonies,' constitute facts that must be charged in an indictment and proven to a jury under a 'beyond a reasonable doubt' standard." Id. at 1226; see also United States v. Barnett, 398 F.3d 516, 524-25 (6th Cir. 2005) (concluding a sentencing enhancement under the ACCA does not violate the Sixth Amendment); United States v. Nolan, 397 F.3d 665, 667 n.2 (8th Cir. 2005) (same).

B.

The ACCA applied to Defendant because (1) a jury convicted him of being a felon in possession of a firearm, and (2) he had, among others, three different felony arson convictions. The ACCA specifically defines arson as a "violent felony." Defendant does not argue that arson, as defined under New Mexico law, is not a "violent felony" under the ACCA or that the district court considered improper evidence in determining whether his three prior arson felonies constituted "violent felonies" for purposes of § 924(e). See Shepard, 125 S. Ct. at 1263. Defendant's sole argument is that the Sixth Amendment entitled him to have a jury determine whether his prior felonies were "violent." We have already rejected this argument, and do so again here for the reasons cogently explained in

21

<u>Moore</u>.  Thus, Defendant failed to carry his burden of demonstrating error under the first prong of the plain-error test.

       AFFIRMED.