**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEREMY WAYNE STANLEY,

    Defendant - Appellant.

Nos. 05-7063 and 05-7069

E. D. Oklahoma

(D.C. No. 05-CR-3-P)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

Jeremy Wayne Stanley was charged in a three-count indictment with (1) possession with intent to distribute methamphetamine, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) possession of a machine gun, *see* 18 U.S.C. § 922(o); and (3) possession of a firearm during the commission of a drug-trafficking crime, *see id.* § 924(c)(1)(B)(ii). A jury found him guilty on all three counts, and he was

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

sentenced to 372 months in prison. On appeal he contends that (1) his due-process right to present a defense was denied by a witness's refusal to testify; and (2) there was insufficient evidence to support the jury's verdict on the § 924(c) count. We affirm, holding that a defendant's right to a fair trial does not include the right to force a witness to waive his privilege against self-incrimination, and that there was sufficient evidence to support the § 924(c) charge.

## I. BACKGROUND

After James Glodrey was arrested on drug charges, Officer John Bynum of the Wapanucka Police Department approached him about cooperating with the police. According to Glodrey's trial testimony, Officer Bynum told him that "if I would work with them, . . . he would make all of my troubles disappear." R. Vol. II at 197. Glodrey agreed to cooperate and gave Officer Bynum the name of Jeremy Stanley, from whom he had bought drugs on a number of occasions.

A controlled buy was conducted at Mr. Stanley's home on September 11, 2004. The officers watched from about a block away as Glodrey went to the house to purchase drugs. Mr. Stanley was standing outside his home holding a bag when Glodrey arrived. He put the bag down, saying, "'Check that out.'" R. Vol. II at 210. Glodrey opened the bag and saw that it contained a machine gun. The two then went into Mr. Stanley's home (with Mr. Stanley carrying the bag containing the gun). Glodrey testified that Mr. Stanley showed him some clips containing ammunition for the gun, but never loaded it; Mr. Stanley

"[p]ulled up the front of his pants and stuck [the gun] in it. . . . He said that the cops had been driving by that day and he was kind of worried about that and the first one in the door gets 1200 rounds a minute." R. Vol. II at 216. Glodrey purchased a "sixteenth" of methamphetamine for $100, and then left with the drugs and returned to the police station, where he told the officers what had occurred. Mr. Stanley was located and arrested two days later.

On the eve of trial Mr. Stanley filed a motion to dismiss the charges against him, contending "that he can not be afforded a fair and impartial trial" because Bynum had informed the parties that he would invoke his privilege against self-incrimination if called to testify. R. Vol. I Doc. 38. The motion noted that Bynum was no longer a law-enforcement officer, "currently stands charged . . . with two felony counts relating to his activities in drug cases while employed as Wapanucka Police Chief," and had previously been placed on probation for "Indecent Exposure . . . , which is a crime of moral turpitude." *Id*. Bynum was examined by the court outside the presence of the jury and, on the advice of counsel, invoked his Fifth Amendment privilege. Another hearing was held after the government rested its case, and Bynum again asserted that he would invoke his Fifth Amendment privilege if called to testify. Neither side argued that he did not have the right to do so. Bynum was not called to the stand, and Mr. Stanley was convicted on all charges.

## II. DISCUSSION

### A. Right to present a defense

Mr. Stanley contends that his due process right to present a defense was violated by Bynum's refusal to testify, which "prevented the Defendant from showing to the jury that [Bynum] was charged with felony counts of grand larceny and embezzlement" and of "falsely reporting a crime, and probation for indecent exposure." Aplt. Br. at 12. He asserts that the alleged misconduct is "relevant to Bynum's character and conduct as an officer entrusted to enforce the law," and "to Bynum's dealings with informant James Glodrey." *Id*. at 12-13.

"A criminal defendant's right to present a defense is essential to a fair trial." *United States v. Serrano*, 406 F.3d 1208, 1214 (10th Cir. 2005). "The Fifth . . . and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses." *Id*. at 1215. But this right "is not absolute." *Id*. "The right to present a defense . . . does not displace traditional testimonial privileges. . . . Several courts of appeal, therefore, have held that a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination." *Id*. (internal citations omitted).

In this case Mr. Stanley conceded that Bynum had a right to invoke the privilege, and there is no allegation that the court or the prosecution improperly

influenced Bynum's decision. *See id.*, at 1215-16 (right to present a defense is violated when "the government . . . substantially interfere[s] with a defense witness's decision to testify."). We conclude, therefore, that Bynum's refusal to testify did not deprive Mr. Stanley of the right to present a defense.

**B.      Insufficient Evidence**

Next, Mr. Stanley contends that there was insufficient evidence for the jury to convict him on the § 924(c) charge. We review this claim de novo, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government," and reversing the conviction "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Toles*, 297 F.3d 959, 968 (10th Cir. 2002) (internal quotation marks omitted).

Section 924(c)(1)(A) provides punishment for any person who (1) "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm," or (2) "in furtherance of any such crime, possesses a firearm." *See United States v. Lott*, 310 F.3d 1231, 1246 (10th Cir. 2002). Subsection (c)(1)(B)(ii) increases the penalty if the firearm is a machine gun. Mr. Stanley does not dispute that he "carrie[d] or use[d]" a machine gun, as required by alternative (1) in § 924(c)(1)(A). He contends only that he did not carry it "in relation to" the drug transaction.

> [T]he phrase "in relation to" "at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. . . . Instead, the gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense."

*United States v. Iiland*, 254 F.3d 1264, 1271 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993) (internal quotation marks and brackets omitted)). "The in relation to clause is intended to prevent the punishment of possession alone. Consequently, [it] requires there to be a nexus between the firearm and the underlying offense." *United States v. Avery*, 295 F.3d 1158, 1175 (10th Cir. 2002) (internal quotation marks, citation, and ellipsis omitted).

In this case the evidence showed that Mr. Stanley was selling methamphetamine from his home; he kept the gun on his person or within easy reach; the gun was an illegal machine gun; the gun was not loaded, but there were two ammunition clips in the bag with the gun; and the avowed purpose of the gun was to injure law-enforcement officers who might seek entry into his home. Certainly, it was no "accident or coincidence" that the gun was present. *Iiland*, 254 F.3d at 1271 (internal quotation marks omitted). And, given that the gun was there to protect Mr. Stanley's illicit enterprise, it had a "purpose or effect with respect to" that crime. *Id*. (internal quotation marks omitted).

Mr. Stanley argues that he was unaware that Glodrey was coming to purchase drugs, and that the "evidence indicated that the Defendant's intent during the initial encounter with Glodrey was to merely show off the gun; the

Defendant could not be intending to use the gun during a drug trafficking crime which he was unaware was about to happen." Aplt. Br. at 18. That he did not know that Glodrey was coming to purchase drugs is irrelevant; he had the gun in his possession because the police had been driving by. If anything, his having the gun in his possession even though he did not know that Glodrey was coming suggests that he did not have it merely to show it to a friend. We hold that the evidence was sufficient to sustain the verdict.

## III.    CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge