State of Nebraska, appellee, v.
Tyrese A. Phillips, appellant.
___ N.W.2d ___

Filed December 6, 2013.    No. S-12-711.

1. **Constitutional Law: Self-Incrimination: Appeal and Error.** A court's decision to allow a witness to invoke his or her Fifth Amendment right against self-incrimination is reviewed for an abuse of discretion.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.

3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

4. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

5. **____: ____: ____.** Because of the factors a trial court must weigh in deciding whether to admit evidence under the residual hearsay exception, an appellate court applies an abuse of discretion standard to hearsay rulings under the residual hearsay exception.

6. **Constitutional Law: Due Process.** The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

7. **Judgments: Appeal and Error.** On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts.

8. **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not be disturb its ruling unless the court abused its discretion.

9. **Motions for New Trial: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court.

10. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case.

11. **Constitutional Law: Self-Incrimination.** The provision in the Fifth Amendment to the U.S. Constitution that no person shall be compelled to give evidence against himself or herself of an incriminating nature must be accorded liberal construction in favor of the right it was intended to secure.

12. **____: ____.** The Fifth Amendment privilege not only permits a person to refuse to testify against himself or herself during a criminal trial in which he or she is a defendant, but also grants him or her the privilege to refuse to answer

questions put to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him or her in future criminal proceedings.

13. **Constitutional Law: Witnesses: Self-Incrimination.** While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns.

14. ____: ____: ____. The privilege against compulsory self-incrimination afforded by the Fifth Amendment not only extends to answers that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant. It need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

15. **Immunity: Witnesses: Prosecuting Attorneys.** Absent a motion by the county attorney or other prosecuting attorney, a trial court lacks authority to grant immunity and order a witness to testify.

16. **Confessions: Rules of Evidence: Words and Phrases.** A "statement" within the meaning of Neb. Rev. Stat. § 27-804(2)(c) (Reissue 2008) is a specific individual statement that a proponent offers into evidence rather than the entire narrative of which the statement is a part; § 27-804(2)(c) uses the term "statement" in a narrow sense to refer to a specific declaration or remark incriminating the speaker and not more broadly to refer to the entire narrative portion of the speaker's confession.

17. **Rules of Evidence: Hearsay.** In determining admissibility under the residual hearsay exception, a court must examine the circumstances surrounding the declaration in issue and may consider a variety of factors affecting the trustworthiness of a statement. A court may compare the declaration to the closest hearsay exception as well as consider a variety of other factors affecting trustworthiness, such as the nature of the statement, that is, whether the statement is oral or written; whether a declarant had a motive to speak truthfully or untruthfully, which may involve an examination of the declarant's partiality and the relationship between the declarant and the witness; whether the statement was made under oath; whether the statement was spontaneous or in response to a leading question or questions; whether a declarant was subject to cross-examination when the statement was made; and whether a declarant has subsequently reaffirmed or recanted the statement.

18. ____: ____. The residual hearsay exception is to be used rarely and only in exceptional circumstances.

19. **Criminal Law: Constitutional Law: Due Process: Rules of Evidence.** Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. However, the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.

20. **Constitutional Law: Witnesses: Self-Incrimination: Waiver.** A defendant's right to present a defense is not absolute and does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self-incrimination.

21. **Motions for Mistrial: Prosecuting Attorneys: Proof.** Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, for appellant.

Jon Bruning, Attorney General, and Erin E. Tangeman for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Tyrese A. Phillips appeals his convictions in the district court for Douglas County for second degree murder and use of a deadly weapon to commit a felony. Phillips generally claims that the court erred when it allowed a witness to assert his Fifth Amendment privilege against self-incrimination and failed to grant the witness use immunity, thereby preventing testimony that Phillips asserts was helpful to his defense. He claims in the alternative that the court should have admitted the witness' recorded statement to police under a hearsay exception. He claims the foregoing rulings denied him a complete defense. He also claims that a mistrial should have been declared or that a new trial should have been granted because the State knew a witness would testify falsely and withheld exculpatory evidence when it did not inform him prior to trial of certain statements made by a potential witness. We reject Phillips' assignments of error and affirm his convictions and sentences.

## STATEMENT OF FACTS

The State charged Phillips with first degree murder and use of a deadly weapon to commit a felony as a result of

an incident in which Phillips shot and killed Joseph Piper. The incident involved a confrontation between two groups of people that included several high school students. Phillips and Piper were on opposite sides of the confrontation. There were various witnesses at trial who described the incident, including participants and observers. Each witness told his or her own version of events, but the following description incorporates testimony of these witnesses.

The confrontation came about as a result of a dispute between Phillips' friend, Mitch Harrington, and Piper's friend, Mario Gutierrez. Gutierrez was upset with Harrington because Harrington had argued with Gutierrez' girlfriend and called her derogatory names. It was decided that Gutierrez would fight Harrington after school on April 5, 2011. On that day, Harrington met at his house with Phillips and two other friends, one of whom was Tyler Weakly, who were to give Harrington a ride and be his backup for the fight. They left the house in Weakly's car. They had two baseball bats in the car, and Phillips was carrying a handgun. That same afternoon, Gutierrez and Piper went to the home of Jacob Jensen, where they and other friends of Jensen, including Duane Cox, helped Jensen move some furniture before they headed out for the fight.

Harrington and his friends arrived at a discount store's parking lot, where it had been determined the fight would take place. When they arrived, Gutierrez was present with a group of approximately 20 people who were there either to support Gutierrez or to watch the fight. Harrington and Gutierrez engaged in a brief fist fight but suspended the fight after learning that the police had been called to that location.

Harrington and Gutierrez decided to move to a local city park to continue the fight. Harrington's group, which included Phillips, arrived at the park before Gutierrez; they exchanged words with some of Gutierrez' friends who were already at the park, but no fighting broke out. About a half hour later, a truck and a Ford Expedition driven by Jensen and Cox, respectively, arrived. Several men, including Gutierrez, got out of the vehicles; some of them were carrying what looked to be bats or pipes. Gutierrez' group began

walking toward the vehicle in which Harrington's group sat. Members of Gutierrez' group were yelling things to antagonize Harrington's group.

Phillips got out of the vehicle. He pulled out his gun and cocked it as he walked toward Gutierrez' group. Phillips fired some shots into the air, but members of Gutierrez' group said that the gun was "fake" and they kept advancing toward Phillips. Piper, who was part of Gutierrez' group, was yelling and waving his hands in the air as the group advanced toward Phillips. Phillips fired some more shots, this time into the ground. The shots caused dust and dirt to fly up, which in turn caused most members of Gutierrez' group to retreat to their vehicles. Piper was the sole member of the group who continued toward Phillips.

Piper and Phillips exchanged words, while Piper made gestures that some witnesses described as gang signs. When Piper began to return to the vehicles, Phillips ran up to him and put the gun to Piper's head. They exchanged more words before Phillips stepped back and shot Piper in the chest. Piper immediately fell to the ground. Phillips stood over Piper and fired more shots at him as he lay on the ground. One witness testified that Phillips told the Gutierrez group to "'[c]ome pick up your dead homey.'"

Weakly was driving the vehicle that was occupied by members of Harrington's group. Weakly drove near Phillips, and Phillips got into the vehicle. The vehicle took off at a high rate of speed. Members of Gutierrez' group took off after them, but the vehicle driven by Weakly eventually lost them. Weakly took Harrington and Phillips to Phillips' home.

Piper died from the gunshot wounds, and Phillips was arrested. At Phillips' trial, the State presented testimony from various witnesses, including witnesses who had participated in or had seen the confrontation between the two groups.

Phillips' theory of defense was that he acted in self-defense and in defense of others and, alternatively, that if he was guilty of a crime, it was the lesser offense of manslaughter. Key to Phillips' defense were his claims that Piper had a gun and that he aimed it at Phillips. In his defense, Phillips presented several witnesses and testified himself.

Phillips testified, inter alia, that before he got out of the vehicle and as Piper and the others were advancing toward the vehicle, Piper motioned to his waistband and lifted his shirt. Phillips saw a black handle. He got out of the car and fired shots into the air, but the other group said he was shooting blanks and kept advancing while yelling derogatory terms, including racial slurs, at Phillips. He shot at the ground to show them that the gun was real. While some of the group retreated, Piper was "patting his waistline saying something," which action Phillips described as "gesturing that he wanted to shoot." Phillips started to retreat, but someone from the other group yelled a derogatory term at Phillips and he turned. Phillips testified that he saw Piper aiming a gun at him. Phillips fired his gun at Piper.

Contrary to the testimony of other witnesses, Phillips testified that he stopped shooting when Piper hit the ground. A witness for the State who conducted the autopsy testified that six bullets hit Piper and that he died from multiple gunshot wounds. Phillips testified that he ran up to check Piper's condition and that he told Piper's friends to get him to a hospital. Phillips started to back up, and he saw Gutierrez and one of his friends run up to Piper and take the gun from Piper. Weakly then drove up to Phillips and told him to get in the car. Phillips did, and they left the park while being chased by the other group.

Because various witnesses had testified that Piper did not have a gun, Phillips attempted to bolster his defense by presenting testimony from Weakly that Weakly had seen Piper with a gun. Hours after the shooting on April 5, 2011, Weakly was arrested and questioned by police. Weakly gave the police a statement regarding the incident in which he stated, inter alia, that when Gutierrez' group arrived at the park and was walking toward the vehicle occupied by Weakly, Phillips, and others, Piper lifted his shirt and displayed a gun in his waistband. Weakly also stated that Piper was showing gang signs and that Phillips shot Piper after Piper lifted his shirt a second time. After he gave his statement to police, Weakly was charged with being an accessory to a felony. The charge against Weakly was pending at the time of Phillips' trial.

Phillips knew that Weakly planned to invoke his Fifth Amendment right against self-incrimination in order to avoid testifying at Phillips' trial. Therefore, Phillips made a showing to the court outside the presence of the jury in order to address issues regarding Weakly's testimony. During the trial, Phillips called Weakly as a witness. After giving his name and testifying that he had been charged as an accessory to a felony in connection with the charges against Phillips and that he had given a statement to police, Weakly asserted his Fifth Amendment right to remain silent and would not answer further questions. The court ruled that based on Weakly's invocation of his Fifth Amendment rights, the court would not require Weakly to answer Phillips' questions. Phillips later requested the court to order the State to grant use immunity to Weakly to allow Weakly to testify at Phillips' trial. The court refused the request.

When it was clear that Weakly would be unavailable as a witness due to his invocation of his Fifth Amendment rights, Phillips attempted to have a recording of Weakly's statement to police admitted into evidence. Phillips summarized the content of the recorded statement and argued that the statement was admissible as an exception to the hearsay rule. Phillips focused on Weakly's statement that Piper had a gun and specifically argued that the statement could be admitted either as a statement against penal interest or under the residual hearsay exception. The court ruled that Weakly's statement that he saw Piper had a gun did not expose Weakly to criminal liability and that therefore, the statement did not qualify as a statement against penal interest. The court further ruled that there were no equivalent guarantees of trustworthiness to make the statement admissible under the residual hearsay exception. The court concluded that the statement was inadmissible hearsay.

During Phillips' defense, he called Cox as a witness. Cox was a part of the group that included Gutierrez and Piper during the confrontation. Cox had been listed as a witness for the State, but he was not called by the State. Cox testified regarding the confrontation and stated that he and Jensen drove vehicles to the park. When Phillips asked whether Cox had any

weapons with him, Cox testified that he had a pipe. Phillips asked whether Cox saw anyone besides himself armed with any type of weapon. Cox testified that another member of his group had a pipe and that Jensen "had a pistol." Phillips asked where the gun was located, and Cox testified, "It's in his center console where he always has it." Phillips asked how Cox was made aware that Jensen had a gun, and Cox replied, "Because I know [Jensen]."

Phillips unsuccessfully tried to question Cox regarding Cox's interview with prosecutors before trial. Phillips made an offer of proof outside the presence of the jury. Phillips questioned Cox, who acknowledged that when he first talked to the police, he did not mention that Jensen had a gun. Cox also testified that "several weeks" before the trial, he spoke with the prosecutors and told them for the first time that Jensen had a gun.

After Cox was excused, Phillips moved for a mistrial based on prosecutorial misconduct. Phillips asserted that he learned for the first time during Cox's testimony at trial that Cox had informed prosecutors that Jensen had a gun. He argued that the State learned of this fact before the trial and had an obligation to inform Phillips because the evidence was exculpatory and would support Phillips' theory of defense that a member of Piper's group had a gun at the confrontation. Phillips also contended that Cox's testimony showed that Jensen, who had testified for the State, was lying when Jensen testified that he had removed his gun from the console of his vehicle and did not have a gun at the confrontation and that the State knew Jensen was lying when it presented his testimony. Phillips asserted he was denied effective cross-examination of Jensen because he did not know that Cox would testify that, contrary to Jensen's testimony, Jensen had a gun. Phillips argued that the State did not call Cox as a witness because it knew Cox would testify that Jensen had a gun.

The State argued in response that Cox's statement before trial and testimony at trial were merely that he assumed Jensen had a gun in the console of his vehicle because he had seen one there at other times. The State argued it did not have a duty to disclose Cox's statement before trial because Cox did

not tell the State that Jensen possessed, displayed, or used a gun during the confrontation. The State further noted that Jensen had testified that he had a gun that he normally kept in his vehicle, but that he took it out and put it in his house before he went to the fight. The court overruled Phillips' motion for a mistrial.

At the end of the trial, the jury acquitted Phillips of first degree murder but found him guilty of second degree murder and use of a deadly weapon to commit a felony. Phillips moved for a new trial based in part on the court's exclusion of Weakly's statement and the court's overruling his motion for a mistrial. The court overruled the motion for a new trial and sentenced Phillips to imprisonment for consecutive terms of 50 to 60 years for second degree murder and 25 to 30 years for use of a deadly weapon to commit a felony.

Phillips appeals.

## ASSIGNMENTS OF ERROR

Phillips claims that the district court erred when it (1) allowed Weakly to invoke the Fifth Amendment to avoid testifying at trial and in particular that Weakly saw that Piper had a gun, (2) denied Phillips' request to grant use immunity to Weakly to allow him to testify in Phillips' defense, (3) concluded that the recording of Weakly's statement was not admissible as a statement against penal interest, (4) concluded that the recording of Weakly's statement was not admissible under the residual hearsay exception, (5) denied him his constitutional right to present a complete defense when he was not allowed to present Weakly's testimony that Piper had a gun, and (6) overruled his motion for a mistrial and his motion for a new trial based on the State's withholding its knowledge before trial that Cox had stated that Jensen had a gun.

## STANDARDS OF REVIEW

[1] A court's decision to allow a witness to invoke his or her Fifth Amendment right against self-incrimination is reviewed for an abuse of discretion. See *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

[2,3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Valverde, ante* p. 280, 835 N.W.2d 732 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[4] Apart from rulings under the residual hearsay exception, we will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. See *State v. Reinhart*, 283 Neb. 710, 811 N.W.2d 258 (2012).

[5] Because of the factors a trial court must weigh in deciding whether to admit evidence under the residual hearsay exception, an appellate court applies an abuse of discretion standard to hearsay rulings under the residual hearsay exception. See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

[6,7] The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013). On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Id.*

[8] Whether to grant a motion for mistrial is within the trial court's discretion, and this court will not be disturb its ruling unless the court abused its discretion. *State v. Dixon, ante* p. 334, 837 N.W.2d 496 (2013).

[9,10] An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011). Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *Id.*

ANALYSIS

*Fifth Amendment: Court Did Not Err*
*When It Allowed Weakly to Invoke*
*His Fifth Amendment Privilege.*

Phillips first claims the district court erred when it allowed Weakly to invoke the Fifth Amendment to avoid testifying at trial. Phillips makes clear that the evidence he sought from Weakly would have been Weakly's testimony to the effect that Weakly saw that Piper had a gun. Because Weakly's testimony regarding the incident, including testimony that Piper had a gun, would have a provided a link in the chain of evidence which exposed Weakly to criminal liability, we conclude that the court did not err when it allowed Weakly to invoke the Fifth Amendment and refuse to testify at Phillips' trial.

[11,12] The state and federal Constitutions provide that no person shall be compelled to give evidence against himself or herself of an incriminating nature. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). The U.S. Supreme Court has stated that the Fifth Amendment "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). Thus, unlike the analysis regarding admissibility under the hearsay exception for statements against penal interest under Neb. Rev. Stat. § 27-804(2)(c) (Reissue 2008) discussed below, wherein we parse the statement for admissible and nonadmissible portions of evidence, see *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994), the analysis under the Fifth Amendment ordinarily examines an entire line of questioning to determine whether to exclude the testimonial evidence based on privilege. See *Hoffman, supra*. Further, the Fifth Amendment privilege not only permits a person to refuse to testify against himself or herself during a criminal trial in which he or she is a defendant, but also grants him or her the privilege to refuse to answer questions put to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might tend to incriminate him or her in future criminal proceedings. *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998) (citing

*Allen v. Illinois*, 478 U.S. 364, 106 S. Ct. 2988, 92 L. Ed. 2d 296 (1986)).

[13] While a witness may invoke the Fifth Amendment to avoid answering questions, the witness' assertion of the privilege does not by itself establish the risk of incrimination; instead, the court must make inquiry to determine itself whether answering the questions would raise Fifth Amendment concerns. See *Robinson, supra*. Because of the constitutional dimension of the privilege, and consistent with *Hoffman, supra*, we have stated that when a court inquires into the propriety of an invocation of the Fifth Amendment privilege, the guarantee against compulsory self-incrimination must be accorded a liberal construction. *Robinson, supra*.

[14] The privilege against compulsory self-incrimination afforded by the Fifth Amendment "not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman*, 341 U.S. at 486. Accord *Robinson, supra*. It need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *Robinson, supra*.

When Phillips called Weakly as a witness in his defense, Weakly gave his name and testified that he had been charged as an accessory to a felony in connection with the charges against Phillips and that he had given a statement to police. Weakly then asserted his Fifth Amendment right to remain silent and would not answer further questions. Following argument by counsel and upon due consideration, the court ruled that because Weakly had invoked his Fifth Amendment privilege, the court would not require Weakly to answer any more of Phillips' questions regarding the incident.

In the present case, Weakly was charged with being an accessory to the crimes for which Phillips was being tried. Therefore, questions and answers that might tend to incriminate Weakly of such charge are subject to Weakly's invocation of the Fifth Amendment privilege. Phillips' argument on appeal focuses on Weakly's anticipated testimony that Piper had a

gun at the time of the incident. Phillips contends that even if other matters to which Weakly might have testified could have incriminated Weakly, testimony that Piper had a gun, standing alone, would not have incriminated Weakly of anything in particular and therefore, Weakly should not have been allowed to invoke his Fifth Amendment privilege to avoid answering that specific question. We reject Phillips' argument because, although the specific statement may not in itself have incriminated Weakly, the testimony was inextricably tied with other statements which would incriminate Weakly.

At the time of Phillips' trial, Weakly was facing the charge of being an accessory to the felony for which Phillips was being tried. The centerpiece of the State's anticipated case against Weakly was that Weakly was present during the incident and in particular drove Phillips away from the scene. Any testimony by Weakly that would place him at the scene of the shooting would be an admission that he was present when the incident occurred, and such admission would be powerful evidence in a proceeding against Weakly. Weakly could not testify that he saw Piper had a gun during the confrontation without also providing explicit testimony that placed him at the scene of the shooting. The narrative which Phillips sought through the testimony by Weakly would provide a link in the chain of evidence that could incriminate Weakly as an accessory to the felony for which Phillips was being tried.

Giving, as we must, a liberal construction to the guarantee against compulsory self-incrimination, we conclude that testimony by Weakly that he saw that Piper had a gun was covered by Fifth Amendment protection and that therefore, the district court did not abuse its discretion when it allowed Weakly to invoke his Fifth Amendment privilege. We find no merit to this assignment of error.

*Immunity: Court Did Not Err When*
*It Refused to Initiate and Grant*
*Weakly Use Immunity in Order*
*to Force Him to Testify.*

Phillips claims the district court erred when it denied his request that the court grant use immunity to Weakly to allow

him to testify in Phillips' defense. We conclude that because the court cannot grant immunity without a request from the prosecutor, the court did not err when it refused to initiate and grant such immunity.

Once the court concluded that it would allow Weakly to invoke the Fifth Amendment to avoid testifying that he saw Piper had a gun, Phillips requested the court to order the State to grant use immunity to Weakly which would allow Weakly to testify at Phillips' trial without fear that his testimony would be used against Weakly in a future proceeding. The prosecutor did not move the court to grant immunity to Weakly. Immunity was not granted. The court refused Phillips' request.

Phillips' argument relies in part on Neb. Rev. Stat. § 29-2011.02 (Reissue 2008) which provides:

> Whenever a witness refuses, on the basis of the privilege against self-incrimination, to testify or to provide other information in a criminal proceeding . . . , the court, on motion of the county attorney [or] other prosecuting attorney . . . may order the witness to testify or to provide other information. The witness may not refuse to comply with such an order of the court on the basis of the privilege against self-incrimination, but no testimony or other information compelled under the court's order or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case except in a prosecution for perjury, giving a false statement, or failing to comply with the order of the court.

[15] Phillips' reliance on § 29-2011.02 as support for his argument is misplaced. Given the facts, § 29-2011.02 does not apply directly to the present case, because it was Phillips rather than the State who requested the order. We have stated that absent a motion by the county attorney or other prosecuting attorney, a trial court lacks authority to grant immunity and order a witness to testify. *State v. Starks*, 229 Neb. 482, 427 N.W.2d 297 (1988).

Phillips nevertheless contends that a court has inherent authority to grant a witness use immunity. In support of his argument, Phillips cites *Government of Virgin Islands v.*

*Smith*, 615 F.2d 964 (3d Cir. 1980), wherein the U.S. Court of Appeals for the Third Circuit held that a trial court could itself grant judicial immunity to a witness in order to vindicate the defendant's constitutional right to a fair trial. The Third Circuit limited use of such authority to two situations: (1) when the government's decision to not grant immunity is made with the deliberate intention of distorting the judicial factfinding process and (2) when the defendant is prevented from presenting exculpatory evidence crucial to the defendant's case.

This court has previously addressed arguments urging adoption of the holding in *Government of Virgin Islands, supra*. In *Starks*, *supra*, we decided that it was not necessary to consider whether the holding should be adopted because the facts of the case at hand did not present either of the two situations in which the Third Circuit held that the authority could be exercised. In *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006), we addressed a similar argument and noted that other federal courts of appeal had held that trial courts did not have inherent authority to grant use immunity to a defendant's witnesses and that no other federal circuit had followed the Third Circuit's holding in *Government of Virgin Islands*. We stated in *Robinson* that "[t]rial courts in Nebraska do not have inherent authority to confer immunity," 271 Neb. at 726, 715 N.W.2d at 557, and we concluded that the trial court did not err when it refused to order the State to grant immunity to witnesses who invoked their right against self-incrimination.

We note that the Third Circuit recently disapproved of its holding in *Government of Virgin Islands, supra*, to the effect that a trial court has inherent authority to grant a witness judicial immunity. See *U.S. v. Quinn*, 728 F.3d 243 (3d Cir. 2013). On August 14, 2013, the Third Circuit filed *Quinn* in which it noted, as this court had observed in *Robinson*, that it was the only federal court of appeals that had recognized judicial use immunity for witnesses and that other courts had rejected it. The Third Circuit reconsidered its holding in *Government of Virgin Islands* in terms of the separation of powers between branches of government and concluded that "[a]s Congress

has given the power to immunize a witness solely to the Executive Branch, it is not a power courts can exercise." 728 F.3d at 254.

Therefore, to the extent that Phillips relies on *Government of Virgin Islands, supra*, as support for the proposition that the trial court had authority to grant Weakly use immunity, such argument is unavailing. Similar to the Third Circuit's reasoning in *Quinn, supra*, and consistent with our opinion in *Robinson, supra*, we conclude that because the Legislature in § 29-2011.02 has given courts the power to immunize a witness solely upon the request of the prosecutor, it is not a power the court can exercise upon the request of the defendant or upon its own initiative.

For completeness, we note that although the Third Circuit in *Quinn* abandoned judicially initiated use immunity as a remedy, it continued to use the standards set forth in *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), to determine whether the government has violated the defendant's right to a fair trial when a witness is not immunized. Phillips' assignment of error in this case with regard to immunity is limited to an argument that the district court erred when it denied his request to initiate and grant Weakly use immunity. In a separate assignment of error, Phillips asserts that his constitutional due process right to present a complete defense was violated when he was not allowed to present Weakly's testimony that Piper had a gun. We consider that separate assignment of error below.

We conclude that the district court did not err when it refused Phillips' request to grant Weakly use immunity, and we reject this assignment of error.

*Hearsay Exception: Court Did Not Err When It Concluded That Weakly's Recorded Statement Was Not Admissible as an Exception to the Rule Against Hearsay as a Statement Against Penal Interest.*

Phillips next claims the district court erred when it concluded that Weakly's statement to the effect that Piper had a gun made to police in an extended recorded statement was not

admissible as a statement against Weakly's penal interest. See § 27-804(2)(c). We determine that the remark that Piper had a gun was not a self-inculpatory statement on Weakly's part and that therefore, the court did not err when it concluded that this hearsay statement was not admissible as an exception to the rule against hearsay as a statement against the penal interest of the declarant, Weakly.

Once it was clear that Weakly would not be required to testify at Phillips' trial, Phillips attempted to have Weakly's recorded statement to police admitted into evidence. Although the entire statement covered various aspects of the incident during which Phillips shot Piper, Phillips' argument is focused on the specific remark that Weakly saw that Piper had a gun. The parties do not appear to dispute that the recorded statement was hearsay or that Weakly, as the declarant, was unavailable as a witness at Phillips' trial due to his successful invocation of his Fifth Amendment right against self-incrimination. Instead, the argument on appeal is whether Weakly's pretrial statement that Piper had a gun met one of the hearsay exceptions urged by Phillips—as a statement against penal interest, § 27-804(2)(c), or, as we discuss later in this opinion, under the residual hearsay exception, § 27-804(2)(e). The district court rejected both arguments and concluded that the remark was inadmissible hearsay. We agree with both determinations.

Under Neb. Rev. Stat. § 27-802 (Reissue 2008), hearsay is not admissible unless it meets an exception under the rules, and under § 27-804, certain types of hearsay are admissible if the declarant is unavailable as a witness. The statement under consideration is hearsay, and Weakly was unavailable as a witness at Phillips' trial. See, *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011) (stating that declarant who invoked Fifth Amendment privilege was unavailable as witness); § 27-804(1)(a) (unavailability includes situation in which declarant is exempted from testifying on ground of privilege).

Phillips argued that Weakly was unavailable and that Weakly's hearsay statement to police qualified as a statement

against penal interest and was therefore "not excluded by the hearsay rule." § 27-804(2). Under § 27-804(2)(c), hearsay that is admissible if the declarant is unavailable includes "[a] statement which . . . at the time of its making . . . so far tended to subject him to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." This type of statement is commonly referred to as a "statement against penal interest." As an initial matter, to qualify as a statement against penal interest under § 27-804(2)(c), the statement must be self-inculpatory. See *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994). Phillips contends that Weakly's statement that Piper had a gun is self-inculpatory.

Section 27-804(2)(c) also provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Phillips offered Weakly's statement to exculpate himself, and he therefore needed to show that, in addition to subjecting Weakly to criminal liability, corroborating circumstances clearly indicated the trustworthiness of Weakly's statement.

In his appellate brief, Phillips contends that Weakly's remark that the victim had a gun, which is contained within Weakly's extended narrative recorded by the police, should have been admitted under § 27-804(2)(c) as a statement against penal interest. The State disagrees and asserts that the remark to the effect that Piper had a gun is not a statement against Weakly's penal interest. Phillips asserts that the State's disagreement "amplifies the absurdity of the situation[.] On[] the one hand [the State urges that] the statement is precluded on privilege grounds because it is incriminatory to Weakly; but at the same time [the State urges that] it is precluded because it is not really a statement against penal interest." Brief for appellant at 39-40. Phillips also seems to argue that because the recorded statement as a whole is harmful to Weakly, then it follows that any content within the complete narrative is a statement against

penal interest and, therefore, admissible. Phillips misperceives the application of the statutory statement against penal interest exception in § 27-804(2)(c).

Unlike the expansive construction accorded individual remarks under examination for exclusion pursuant to the constitutional privilege against self-incrimination discussed earlier in this opinion, individual remarks under examination pursuant to the statutory hearsay exception in § 27-804(2)(c) must meet the test of "whether the particular remark at issue (and *not* the extended narrative) meets the standard set forth in the Rule [concerning admissibility of statements against penal interest]." See Williamson, 512 U.S. at 607 (Scalia, J., concurring). "The question under Rule 804(b)(3) [equivalent to § 27-804(2)(c)] is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true' . . . ." *Williamson*, 512 U.S. at 603-04 (quoting Fed. R. Evid. 804(b)(3)). As an example of a statement against penal interest, the *Williamson* Court stated: "[A] declarant's squarely self-inculpatory confession—'yes, I killed X'—will likely be admissible under Rule 804(b)(3) against accomplices of his who are being tried under a co-conspirator liability theory. See *Pinkerton v. United States*, 328 U. S. 640, 647[, 66 S. Ct. 1180, 90 L. Ed. 2d 1489] (1946)." 512 U.S. at 603.

[16] "Statement" in § 27-804(2)(c) is a word of art; a "statement" within the meaning of § 27-804(2)(c) is a specific individual statement that a proponent offers into evidence rather than the entire narrative of which the statement is a part. We have noted that "§ 27-804(2)(c) uses the term 'statement' in a narrow sense to refer to a specific declaration or remark incriminating the speaker and not more broadly to refer to the entire narrative portion of the speaker's confession." *State v. Sheets*, 260 Neb. 325, 337, 618 N.W.2d 117, 128 (2000), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007). Our jurisprudence in this area follows that of the U.S. Supreme Court which has said that the federal equivalent of § 27-804(2)(c), rule 804(b)(3), "does not allow admission of non-self-inculpatory statements, even if

they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume . . . that a statement is self-inculpatory because it is part of a fuller confession." *Williamson v. United States*, 512 U.S. 594, 600-01, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994). The Court reasoned in *Williamson* that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth . . . ." 512 U.S. at 599-600.

The reasoning behind the hearsay exception for a statement against penal interest is that a person would not make such a statement unless the statement were true. However, it is possible that within the context of a confession, admission, or other statement generally against a person's penal interest, a person might make statements that would tend to lessen his or her culpability. We believe that under the reasoning in *Williamson*, it logically follows that such statements do not carry the same indication of trustworthiness as a statement that clearly exposes a person to criminal liability; while there is no clear motivation to lie about a fact that could expose one to criminal liability, there is clear motivation to lie about something that lessens one's culpability.

In the present case, the statement that Phillips sought to put into evidence was Weakly's specific remark that he saw that Piper had a gun. Under *Williamson*, we look at the particular remark; and the comment that Piper possessed a gun standing alone would not tend to subject Weakly to criminal liability. The specific statement was not a statement against Weakly's penal interest and to the contrary, and viewing the remark "in light of all the surrounding circumstances," see *Williamson*, 512 U.S. at 604, the statement would tend to lessen Weakly's criminal liability as an accessory to a felony committed by Phillips. Contrary to the dissent's view, Weakly had a motive to fabricate lies. After all, driving an individual away from a crime scene who has a halo of self-defense is better for Weakly than driving an individual away who is an unprovoked aggressor. Even a person not trained in the law, such as Weakly, would so assume. Piper's possession of a gun would tend to

lessen or eliminate Phillips' culpability and, by extension, Weakly's culpability as an accessory.

While parts of Weakly's narrative to police were against his penal interest, the specific remark that Phillips sought to have admitted—that Piper had a gun—was not, standing alone, sufficiently against Weakly's penal interest that a reasonable person in Weakly's position would not have made it unless believing it to be true. The statement did not qualify as hearsay that is admissible pursuant to § 27-804(2)(c). We therefore determine that the district court did not err when it ruled that the offered statement was not admissible as a statement against penal interest. We reject this assignment of error.

*Hearsay Exception: Court Did Not Err When*
*It Concluded That Weakly's Recorded*
*Statement Was Not Admissible as an*
*Exception to the Rule Against*
*Hearsay Under the Residual*
*Hearsay Exception.*

Phillips also claims the district court erred when it concluded that Weakly's recorded statement was not admissible under the residual hearsay exception. See § 27-804(2)(e). We conclude that because the statement that Piper had a gun tended to lessen Weakly's culpability, it did not have the required level of trustworthiness required by this exception, and that the court did not abuse its discretion when it determined it was not admissible under the residual hearsay exception.

The residual hearsay exception found at § 27-804(2)(e) provides:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact, (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this

exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

[17,18] In determining admissibility under the residual hearsay exception, a court must examine the circumstances surrounding the declaration in issue and may consider a variety of factors affecting the trustworthiness of a statement. *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009). A court may compare the declaration to the closest hearsay exception as well as consider a variety of other factors affecting trustworthiness, such as the nature of the statement, that is, whether the statement is oral or written; whether a declarant had a motive to speak truthfully or untruthfully, which may involve an examination of the declarant's partiality and the relationship between the declarant and the witness; whether the statement was made under oath; whether the statement was spontaneous or in response to a leading question or questions; whether a declarant was subject to cross-examination when the statement was made; and whether a declarant has subsequently reaffirmed or recanted the statement. *Id*. The residual hearsay exception is to be used rarely and only in exceptional circumstances. *State v. Garner*, 260 Neb. 41, 614 N.W.2d 319 (2000).

Under both the penal interest exception and the residual hearsay exception, one offering hearsay evidence must show that the circumstances of the making of the statement indicate that such statement is trustworthy. *Epp, supra*. Under *Epp*, we examine the admissibility of Weakly's comment under the residual hearsay exception by comparing the remark to the penal interest exception. As we have explained above, the specific statement that Piper had a gun does not suggest trustworthiness because the remark does not support charges against Weakly and instead tends to lessen Phillips' and thus Weakly's culpability. Therefore, there is greater motivation for fabrication and consequently less indication that the statement was trustworthy.

Because the statement lacks trustworthiness, we determine that the district court did not abuse its discretion when it determined that the statement was not admissible under the residual hearsay exception. We reject this assignment of error.

### Court Did Not Violate Phillips' Right to Present a Complete Defense.

[19] Phillips claims that the district court denied him his constitutional right to present a complete defense. Phillips' argument centers on the court's rulings that prevented him from presenting evidence that Weakly saw Piper had a gun, either through Weakly's testimony or through admission of his statement to police. He argues that these rulings violated his right to present a complete defense. We have stated that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *State v. Poe*, 276 Neb. 258, 754 N.W.2d 393 (2008) (citing *Crane v. Kentucky*, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). We conclude that because the court made appropriate rulings with regard to Weakly's testimony and his hearsay statement, and because Phillips presented evidence of the defense of his choice, the court did not violate Phillips' right to present a complete defense.

[20] We first address the court's ruling that allowed Weakly to invoke his Fifth Amendment privilege to avoid testifying at Phillips' trial. Phillips argues that he was prevented from presenting a complete defense because Weakly was not required to testify at trial that Piper had a gun. However, it has been stated that a defendant's right to present a defense is not absolute and does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self-incrimination. *U.S. v. Serrano*, 406 F.3d 1208 (10th Cir. 2005) (citing holdings

from various federal circuit courts of appeal). The U.S. Court of Appeals for the 10th Circuit noted in *Serrano* that there may be a due process violation if the government substantially interferes with a witness' decision and causes the witness to decide against testifying. Phillips makes no assertion of such coercion. We therefore conclude that it was not a violation of Phillips' right to present a complete defense when, as we have determined above, the court properly allowed Weakly to invoke his Fifth Amendment privilege.

We next address the court's ruling that excluded Weakly's recorded statement under the hearsay rules and, in particular, the ruling that rejected Phillips' argument that Weakly's testimony was a statement against penal interest. Phillips' argument relies heavily on *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006), in which the U.S. Supreme Court concluded that a defendant's right to present a complete defense was violated when the trial court used an evidentiary rule to exclude evidence offered by the defendant to show that another person had committed the crime. In *Holmes*, the Court concluded that the South Carolina rule was arbitrary because, as applied, if the prosecutor's case was strong enough, the evidence of third-party guilt sought to be introduced by the defendant was excluded under the rule, regardless of the merits of such third-party guilt evidence. Under *Holmes*, proper application of well-established rules of evidence are acceptable but "the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." 547 U.S. at 326.

In *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003), we rejected an argument that due process required the trial court to allow the defense to present a hearsay statement. We noted that in *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), the U.S. Supreme Court had held that due process may require admission of a third party's statements against penal interest exculpating the accused where the statements were made under circumstances that provided considerable assurance of their reliability. We further noted that Nebraska had codified the exculpatory penal

interest exception in § 27-804(2)(c) and that the requirement in subsection (2)(c) that there exist corroborating circumstances which clearly indicate the trustworthiness of the proferred hearsay was substantially similar to the *Chambers* requirement of considerable assurance of reliability. We concluded in *Lotter* that the due process analysis was encompassed within the evidentiary statute and that therefore, because the evidence was properly excluded under the statutory framework, its exclusion did not violate due process requirements.

In the present case, because we have determined that Weakly's statement was properly excluded under the hearsay rule, we similarly conclude that the exclusion of the evidence did not violate Phillips' right to present a complete defense. Upon our review of the record, we also note that Phillips was able to pursue his choice of defense in general and, in particular, present evidence contrary to that of the prosecution's case through his own testimony in which he testified that Piper had a gun.

We conclude that neither the court's ruling allowing Weakly to invoke his Fifth Amendment privilege nor the court's ruling excluding the recorded statement under the established hearsay rules violated Phillips' right to present a complete defense. We reject this assignment of error.

*Court Did Not Err When It Overruled*
*Phillips' Motions for a Mistrial*
*and for a New Trial.*

Phillips finally claims the district court erred when it overruled his motion for a mistrial and his motion for a new trial based on Phillips' assertion that the State withheld its knowledge before trial of Cox's statement that Jensen had "a gun with him at the park." Brief for appellant at 48. We determine that the court did not abuse its discretion when it determined that there was no prosecutorial misconduct that required either a mistrial or a new trial.

In his arguments in favor of both the motion for a mistrial and the motion for a new trial, Phillips asserted that it was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when the State did not inform him

before trial of Cox's statements about Jensen's gun. We have described the requirements of *Brady* as follows:

> Under *Brady v. Maryland*, a prosecutor who fails to turn over evidence "favorable to an accused upon request violates due process where the evidence is material . . . to guilt." The Court expanded this rule in *United States v. Bagley*[, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)]. Under *Bagley*, prosecutors have a duty to present material exculpatory evidence even if defense counsel never requests the evidence. Favorable evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability of a different result is shown when the State's evidentiary suppression undermines confidence in the outcome of the trial.

*State v. Jackson*, 275 Neb. 434, 449, 747 N.W.2d 418, 433-34 (2008). Phillips contends that Cox's statement about Jensen's gun was favorable to him because it supported his theory of self-defense, namely, that because Jensen brought a gun to the park, Piper had access to a gun. Phillips asserts that the jury could have inferred that the gun Phillips testified was in Piper's possession was Jensen's gun. He also argues that the State presented testimony that it knew was false when it allowed Jensen to testify that he did not bring a gun to the scene of the confrontation.

The district court rejected these arguments, and upon review, we determine that it did not abuse its discretion in so ruling. Fundamental to Phillips' argument is his characterization of Cox's statement to law enforcement prior to trial and his testimony at trial. We therefore describe and recite from the record.

In their statements to law enforcement, both Cox and Jensen denied possessing a firearm during the altercation that led to Phillips' killing Piper. Jensen testified at trial that he removed his firearm from his vehicle prior to driving to the park. Cox testified for the defense at trial as follows:

> Q Did you see any of the individuals you were with besides you and [Piper] exit vehicles?

A No.

Q Did . . . Jensen ever — to your knowledge did you ever see him outside of the vehicle?

A No.

Q Did you see anyone besides yourself armed with any type of weapon?

A Yeah.

Q Who?

A Well Jeremy [Hilliard] had the pipe and then [Jensen] had a pistol.

Q Okay. And where did he have the pistol?

A It's in his center console where he always has it.

Q And how were you made aware that he had it?

A Because I know [Jensen].

Q Okay. Did you see him out — you said you never saw him outside the car, though?

A No, no. He never got out.

Following this testimony, Phillips then attempted to ask Cox if he told the prosecutors "anything about seeing . . . Jensen with a pistol" when Cox met with them a week or two prior to trial, but this line of questioning was excluded as hearsay. Phillips then made an offer of proof outside the presence of the jury.

In Phillips' offer of proof, Cox testified as follows:

Q Okay. With regard to the questions and answers I want to ask . . . you acknowledge that when the police talked to you on that day you didn't mention anything about any of you or your friends having a pistol; correct?

A Yes.

Q Yesterday you testified that, in fact — [be]cause one of your friends did have a pistol; right?

A Yes.

Q And you indicated that you spoke to the prosecutors about this matter several weeks ago before trial started; correct?

A Yes.

Q And where did that take place?

A At my place of employment.

Q Okay. And during that interview with the prosecu-
tors, did you, for the first time, tell them that Jensen did
have a gun?

A Yes.

Q So they knew that, then; right? But that's the first
time you had admitted that; true?

A Yes.

Following this offer, the court reaffirmed its ruling exclud-
ing testimony regarding the pretrial interview with prosecutors
and Phillips then moved for a mistrial based on prosecutorial
misconduct. Phillips argued that the prosecutors (1) knew
before putting Jensen on the stand that contrary to what was in
the reports, he had a gun and would be lying under oath, and
(2) never informed him that Cox stated that Jensen had a gun,
which information was exculpatory.

The State opposed the motion for a mistrial and argued
that, like his testimony on direct examination, Cox simply
told the prosecutors that he assumed that Jensen had a gun
with him at the park because it was always in the console of
Jensen's vehicle. The State asserted that Cox never told the
prosecutors that he actually saw Jensen use or display a gun
at the park; thus there was no information required to be dis-
closed to Phillips.

The district court found that Cox testified that knowing
Jensen's habits, Cox assumed that Jensen had the gun in the
console of his vehicle at the park, but that there was no tes-
timony from Cox that Jensen actually had it out during the
incident at the park. The court then overruled the motion for a
mistrial, stating that there had been no substantial miscarriage
of justice given the state of the record. Following the verdict,
Phillips moved for a new trial, arguing the same position he
presented in his motion for a mistrial.

The district court entered an 11-page order denying Phillips'
motion for new trial. In overruling Phillips' motion, the court
agreed with the State's characterization of Cox's testimony
to the effect that Cox did not state that he saw Jensen bring
a gun to the confrontation. Instead, Cox's trial testimony was
that he knew Jensen had a gun in his vehicle because he knew
Jensen—meaning he knew Jensen normally carried a gun in

the console of his vehicle. Further, Cox's testimony in the offer of proof when read as a whole did not mean that Cox told prosecutors pretrial that Cox saw Jensen bring a gun to the park.

The court's description of Cox's testimony is consistent with the record. Cox's trial testimony was not that he actually knew Jensen had a gun at the confrontation, but, rather, that he knew Jensen normally carried a gun in his vehicle. Cox's testimony was consistent with that of Jensen. Jensen testified that he normally kept a gun in his vehicle; however, Jensen testified that he left it at home before going to the park for the confrontation. Cox's statement to the prosecutors did not give the State reason to think that Jensen's testimony was false.

[21] Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013). Phillips has not shown any prosecutorial misconduct that resulted in a substantial miscarriage of justice. Phillips has not shown that the State believed Jensen would give false testimony or a reasonable probability that production of Cox's statement to prosecutors would have caused a different result in the trial. We therefore determine that the district court did not abuse its discretion when it overruled his motion for a mistrial. We similarly conclude that the court did not abuse its discretion when it overruled his motion for a new trial made on the same basis. We reject this assignment of error.

## CONCLUSION

We determine that the district court did not err when it allowed Weakly to invoke his Fifth Amendment privilege and when it refused to initiate and grant Weakly use immunity. We also determine that the court did not err when it determined that Weakly's recorded statement was excluded as hearsay evidence that was not admissible either as a statement against penal interest or under the residual hearsay exception. We further conclude that such rulings with regard to Weakly's testimony and his recorded statement did not violate Phillips' constitutional right to present a complete defense. We finally

determine that the court did not abuse its discretion when it overruled Phillips' motions for a mistrial and for a new trial. We therefore affirm Phillips' convictions and sentences for second degree murder and for use of a deadly weapon to commit a felony.

AFFIRMED.

CONNOLLY, J., dissenting.

The court's reasoning at the trial level and in the majority opinion is inherently inconsistent. As the majority opinion states, "Any testimony by Weakly that would place him at the scene of the shooting would be an admission that he was present when the incident occurred, and such admission would be powerful evidence in a proceeding against Weakly." If Weakly can invoke the Fifth Amendment because his statement is strong evidence of his guilt for charged and uncharged crimes, then a reasonable person would not have made the statement unless it were true. The district court's ruling put Phillips' defense into a legal cul-de-sac. The majority opinion closes the circle.

So I disagree that under rule 804(2)(c),[1] Weakly's statement was not a statement against his penal interest. It is true that a court must look at separate parts of a larger narrative to determine whether it was against the declarant's penal interest. But those statements should not lose their relationship to other statements in the narrative when determining their significance to a criminal prosecution. And I do not believe that in *Williamson v. United States*,[2] the U.S. Supreme Court intended to pervert the truth-seeking functions of trials by excluding relevant and trustworthy statements. The context in which Weakly made the statement shows that it is reliable because he had no motive to fabricate lies to curry favor with authorities, nor did he shift blame to others.

Currying favor and shifting blame was the focus of the Court's concern in *Williamson*. There, officers stopped the

---

[1] See Neb. Evid. R. 804(2)(c), Neb. Rev. Stat. § 27-804(2)(c) (Reissue 2008).

[2] *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L.Ed.2d 476 (1994).

declarant, who had a significant quantity of cocaine in the trunk of his car. During custodial questioning, he admitted to his involvement in a drug conspiracy, but attempted to downplay his role and shift blame to the defendant, as the "big fish" in the scheme. The declarant told an investigator that the cocaine belonged to the defendant and that he was transporting it for the defendant. The investigator had promised to report his cooperation to the prosecutor. So the declarant's statement tended to exclusively implicate someone else in criminal acts. The statement did little to subject the declarant to criminal liability because he had already confessed to his involvement.

The Court reversed the judgment upholding the trial court's admission of the declarant's statement as against penal interest. It concluded that statements against penal interest are reliable because "reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."[3] In contrast, "[s]elf-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements."[4] So the Court held that the exception "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory."[5]

But the Court noted that "[e]ven the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor."[6] A court must view the statement in context to determine whether it is self-inculpatory or not: "Even statements that are on their face neutral may actually be against the declarant's interest."[7]

---

[3] *Id.*, 512 U.S. at 599.

[4] *Id.*, 512 U.S. at 600.

[5] *Id.*, 512 U.S. at 600-01.

[6] *Id.*, 512 U.S. at 603.

[7] *Id.*

Under Nebraska's rule 804(2)(c) and the federal counterpart, the declarant need not have confessed to the crime charged against the defendant. Instead, when the statement was made, the statement must have so tended to subject the declarant to criminal liability that a reasonable person would not have made it unless believing it to be true. "[T]his question can only be answered in light of all the surrounding circumstances."[8] And this court has previously considered this question in determining whether the State's offer of a declarant's custodial statements violated the Confrontation Clause.

As we know, in 2004, the Confrontation Clause landscape shifted when the U.S. Supreme Court decided *Crawford v. Washington*.[9] It held that the Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had previous opportunity to cross-examine the witness, regardless of whether a court considers such statements reliable. Before *Crawford*, courts could consider whether the statement contained adequate indicia of reliability to assess the truthfulness of the evidence even without the opportunity for cross-examination.[10] And in *State v. Hughes*,[11] we considered whether a statement against penal interest had particularized guarantees of trustworthiness.

In *Hughes*, we recognized that a statement made in response to police interrogation generally does not have inherent guarantees of reliability and trustworthiness because the declarant may be trying to curry favor with the authorities. So a court must examine the totality of the circumstances surrounding the making of the statement. We stated that the relevant factors are whether the declarant was in police custody when the statement was made, whether the declarant had a motive to mitigate his own criminal liability, and whether the declarant made the statement in response to leading questions.

---

[8] *Id.*, 512 U.S. at 604.

[9] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[10] See *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), *overruled, Crawford, supra* note 9.

[11] *State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33 (1993).

As in *Williamson*, the declarant in *Hughes* implicated a third party. An investigating officer testified he told the suspect that he must be the shooter to scare him. In response, the suspect named the defendant as the shooter. The State sought to introduce this statement at trial. We held that the statement was unreliable and that its admission violated the Confrontation Clause. We concluded that the officer did not give the suspect a choice to admit his crimes and cooperate. Instead, he could only deny the officer's accusations and had a motive to lie and identify another person as the shooter, which motive could be explored only through cross-examination.

But the circumstances here are distinct from the facts in both *Williamson* and *Hughes*. Police officers arrested Weakly because they knew he was the driver. But an officer told Weakly early in the interrogation that investigators did not believe he was the shooter. And Weakly made his statement after the officer asked him to describe the events at the park, not in response to leading questions or accusations. In stating that Phillips shot Piper after Piper exposed a gun under his shirt, Weakly was only explaining the events that preceded Phillips' shooting Piper.

So unlike the declarant in *Williamson* and *Hughes*, Weakly did not attempt to shift blame to another participant. Nor did the State offer him leniency for providing evidence against Phillips. He had no motive to fabricate lies to minimize his role in the homicide or to curry favor with authorities.[12] Providing false information to the officers that conflicted with other reports would have forfeited any opportunity he had for leniency.

More important, Weakly made statements inculpating himself in Piper's murder when he did not know what charges would be brought against him because of his involvement in the altercation. The State later charged Weakly with being an accessory to a felony, but aiding and abetting first degree murder or conspiracy were clearly on the table when Weakly made these statements. As other courts have recognized, the test is whether the statement would be probative of guilt in a trial

---

[12] See *Williamson, supra* note 2.

against the declarant.[13] And every statement that Weakly made showed his involvement and knowledge of the crime.

Weakly told the officers that he drove Phillips and others to a planned altercation. His statements showed that he knew Phillips had brought a gun intending to fight. He knew before Phillips left the vehicle that he was prepared to shoot someone and had done so. The record reflects that Weakly brought baseball bats for his friends to take with them. A reasonable person in Weakly's position would not have falsely admitted to participating in this crime knowing that his admission could subject him to criminal liability for a murder.[14]

Nor were his statements neutral in the context of the charges that the State could have filed; they would have been material evidence of his guilt. That is, the State could have used Weakly's statement that Phillips shot Piper after Piper exposed a gun to show Weakly's participation in a planned attack, even if he did not intend a murder. The prosecutor's arguments during the in camera hearing to determine whether Weakly could invoke his privilege against self-incrimination show that more serious charges could have been filed. She specifically argued that if Weakly testified, there were facts in the case that could subject him to further charges and that the State would use his testimony against him if he took the stand. And under a de novo review, I believe the record clearly shows that Weakly's statements implicated him in the charged crime as well as other potential charges.

In sum, *Williamson* held that the statement against interest exception does not apply when a coparticipant in a crime confesses in a manner that primarily diminishes his own culpability or shifts blame to another person. Weakly did neither. Nor should *Williamson* be read as condoning the parsing of a declarant's statement to the point that the declarant's criminal liability for the statement is lost. *Williamson* specifically

---

[13] See, e.g., *U.S. v. Jinadu*, 98 F.3d 239 (6th Cir. 1996); *U.S. v. Garcia*, 897 F.2d 1413 (7th Cir. 1990); *United States v. Garris*, 616 F.2d 626 (2d Cir. 1980); *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978).

[14] See, *U.S. v. Smalls*, 605 F.3d 765 (10th Cir. 2010); *U.S. v. Wexler*, 522 F.3d 194 (2d Cir. 2008); *U.S. v. Tocco*, 200 F.3d 401 (6th Cir. 2000).

directed courts to consider the context. It was not intended to exclude relevant statements where the declarant had no motive to lie. And this case illustrates that interpreting *Williamson* too broadly allows the State to manipulate which relevant evidence will come before the trier of fact.

Of course, under rule 804(2)(c), Weakly's statements must also be corroborated by circumstances indicating that they are trustworthy. But because the trial court did not rule on this issue, I would reverse, and remand for further proceedings.

———————————

IN RE INTEREST OF MYA C. AND SUNDAY C.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. NYAMAL M., APPELLANT.
___ N.W.2d ___

Filed December 6, 2013.    No. S-12-811.

1. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
3. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** Juvenile court proceedings are special proceedings under Neb. Rev. Stat. § 25-1902 (Reissue 2008), and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.
4. **Juvenile Courts: Parent and Child.** Under Neb. Rev. Stat. § 43-288 (Reissue 2008), a juvenile court has discretion to require a parent, among other things, to comply with a rehabilitation plan that will correct the conditions that led to the adjudication and to adequately provide for his or her child's needs.
5. **Juvenile Courts: Parental Rights: Appeal and Error.** A juvenile court order imposing a rehabilitation plan affects a parent's substantial right in a special proceeding and is appealable.
6. **Juvenile Courts: Final Orders: Time: Appeal and Error.** A juvenile court order that merely extends the time that the requirements of a previous order are in effect does not affect a substantial right or extend the time in which a party may appeal the original order.
7. **Juvenile Courts: Parental Rights: Appeal and Error.** A juvenile court order that adopts a case plan with a material change in the conditions for reunification with a parent's child is a crucial step in proceedings that could possibly lead to the termination of parental rights. Such orders affect a parent's substantial right in a special proceeding and are appealable.